**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION**

| | | |
|---|---|---|
| **NIMBLE CRANE, LLC,**<br>　　　　　*Plaintiff,* | § | |
| | § | |
| **v.** | § | **MO:25-CV-00194-DC** |
| | § | |
| **CONQUEST COMPLETION**<br>**SERVICES, LLC and EASTERN**<br>**ENERGY SERVICES, INC.,**<br>　　　　　*Defendants.* | § | |

**ORDER GRANTING IN PART AND DENYING IN PART
NIMBLE CRANE'S MOTION FOR SUMMARY JUDGMENT**

Before the Court is Plaintiff Nimble Crane's Motion for Summary Judgment (Doc. 35). Having reviewed the motion, the response, the reply, the record, and the relevant law, the Court **GRANTS IN PART AND DENIES IN PART** the motion.

## I.   Background

This case arises from Conquest's unpaid debt to Nimble for oilfield services Nimble performed in 2023. In September 2023, Eastern, as buyer, entered into an Asset Purchase Agreement ("APA") with Conquest, as seller, under which Eastern purchased substantially all of Conquest's assets and agreed to assume certain liabilities. Doc. 43 at 4–5. Eastern did not have a presence in the Permian Basin before the APA. Doc. 35 at 6.

Before closing, Conquest provided Eastern with a spreadsheet showing that, as of July 2023, Conquest owed Nimble $414,440.93 for services Nimble had rendered. *Id.* at 6. After closing, Eastern sent Nimble several checks on Conquest invoices, and Nimble deposited them. *Id.* at 6–7. Nimble contends those payments were made pursuant to a "payment plan"; Eastern disputes that the alleged payment plan is an enforceable contract

between Eastern and Nimble. *Id.* at 6–7; Doc. 43 at 3, 6–7. Nimble also alleges that twenty invoices remain unpaid in the amount of $341,590.93. Doc. 35 at 7.

In October 2024, Eastern and Conquest entered into a settlement agreement concerning alleged discrepancies in Conquest's working capital and liabilities in connection with the APA. Nimble was not a party to that settlement. *Id.* at 4; Doc. 43 at 5–6.

## II. Legal Standard

Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Id.* In deciding a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmovant and draws all reasonable inferences in that party's favor. *Impossible Elec. Techniques, Inc. v. Wackenhut Protective Sys., Inc.*, 669 F.2d 1026, 1031 (5th Cir. 1982).

The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-25 (1986). But when, as here, the movant seeks summary judgment on a claim or counterclaim for which the nonmovant will bear the burden of proof at trial, the movant may satisfy its Rule 56 burden by pointing to the absence of evidence supporting an essential element of that claim. *Id.* at 325. The burden then shifts to the nonmovant to identify specific evidence in the record, creating a genuine dispute for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).

## III.   Discussion

### A.  Scope of the Motion

Nimble requests sweeping relief, including judgment holding Eastern and Conquest jointly and severally liable for $341,590.93 and dismissal of Eastern's counterclaim. Doc. 35 at 1-2. But, as Eastern points out, the motion meaningfully develops only two issues: Nimble's APA third-party beneficiary theory and its attack on Eastern's unjust enrichment counterclaim. Doc. 43 at 2-3. The motion does not meaningfully develop its separate breach of contract theory based on the alleged payment plan, its declaratory judgment claim, or its TUFTA fraudulent transfer claim. *See generally* Doc. 35. As a result, the Court only addresses what is properly before it.

### B.  Nimble as a Third-Party Beneficiary

Nimble is not entitled to summary judgment on its breach of contract claim under the theory that it may enforce the APA as an intended third-party beneficiary. As the movant, Nimble bears the burden to show that the summary judgment record establishes, as a matter of law, that the APA unmistakably confers on Nimble the right to enforce Eastern's alleged obligation to pay Conquest's debt. On this record, Nimble has not carried that burden.

Nimble's motion is based on the APA itself—but on a provision that does not exist and under law that (likely)[1] does not govern. As an initial matter, Nimble quotes a "No-Third Party Beneficiary" clause that is included nowhere in the APA. *Compare* Doc. 37 at 53

---

[1] As is stated below, because Nimble appears to have overlooked the clause entirely, the Court does not have full adversarial briefing such that it could determine whether the clause properly applies.

3

*with* Doc. 35 at 14. Though the APA does include a similar clause, it involves different language from the one Nimble quotes—and thus language that Nimble does not grapple with until its reply. And precisely because Nimble's attempts to reframe the argument around the correct language were raised for the first time in its reply, the Court need not consider them. The Fifth Circuit has repeatedly made clear that arguments raised for the first time in a reply brief are waived. *See City of Abilene v. United States Envtl. Prot. Agency*, 325 F.3d 657, 661 n.1 (5th Cir. 2003).

Additionally, as Eastern points out, the APA contains a Mississippi choice-of-law clause. Doc. 43 at 10–11. Nimble's opening motion nonetheless proceeds under Texas law and says nothing about the choice-of-law clause or Mississippi law. *See generally* Doc. 35. Because Nimble appears to have overlooked the clause entirely, the Court does not have full adversarial briefing such that it could determine whether the clause properly applies. Nimble thus has not shown, from the actual text of the APA, that Eastern and Conquest unmistakably intended to grant Nimble the right to sue for breach of that agreement.

Instead, much of Nimble's motion focuses on different, post-APA facts: the alleged "payment plan," the checks Eastern sent to Nimble, and Eastern's post-closing payment-related communications. *Id.* at 3-14. Those facts may bear on Nimble's separate payment-plan theory. But they do not establish, as a matter of law, that Nimble is an intended third-party beneficiary of the APA itself. Eastern is therefore correct that Nimble's motion conflates distinct theories. The claim addressed here turns on the APA's text, and Nimble's opening motion does not carry its burden on that question.

The Court therefore denies Nimble's motion on these grounds.

### C.  The Passive Unjust Enrichment Counterclaim

Texas law recognizes two "theories or species" of unjust enrichment: one for the active, wrongful securing of a benefit, and another for the passive receipt of a benefit that would be unconscionable to retain. *Matter of KP Eng'g, L.P.*, 63 F.4th 452, 457 (5th Cir. 2023); *Dig. Drilling Data Sys., LLC v. Petrolink Servs., Inc.*, 965 F.3d 365, 379–80 (5th Cir. 2020) (quoting *Heldenfels Bros., Inc. v. City of Corpus Christi ("Heldenfels II")*, 832 S.W.2d 39, 41 (Tex. 1992)). Under the first theory, a claimant must show that the defendant obtained a benefit "by fraud, duress, or the taking of an undue advantage." *Dig. Drilling*, 965 F.3d at 379–80 (quoting *Heldenfels II*, 832 S.W.2d at 41). Under the second, a plaintiff need only show that a person passively received a benefit that would be unconscionable to retain. *Id.* at 380 (citing *Villarreal v. Grant Geophysical, Inc.*, 136 S.W.3d 265, 270 (Tex. App.—San Antonio 2004, pet. denied)).

Some Texas courts have observed that unjust enrichment is not an independent cause of action, but a theory that may support claims for restitution or other similar relief. *See, e.g., Mowbray v. Avery*, 76 S.W.3d 663, 680 (Tex. App.—Corpus Christi-Edinburg 2002, pet. denied) (citing *City of Corpus Christi v. Heldenfels Brothers, Inc. ("Heldenfels I"),* 802 S.W.2d 35, 42 (Tex. App.—Corpus Christi-Edinburg 1990), *aff'd,* 832 S.W.2d 39 (Tex. 1992)). The Court, however, need not resolve that issue here. Even assuming Eastern's passive unjust enrichment counterclaim is cognizable, summary judgment is still warranted on this record.

Nimble, as the movant, bears the initial burden to show that there is no genuine dispute of material fact and that it is entitled to judgment as a matter of law. But because Eastern bears the burden of proof at trial on its unjust enrichment counterclaim, Nimble

5

may satisfy that burden by showing an absence of evidence on an essential element of the counterclaim. *Celotex*, 477 U.S. at 322–23; *Little*, 37 F.3d at 1075. The burden then shifts to Eastern to identify specific record evidence creating a genuine dispute for trial on the dispositive issue here: whether it would be unconscionable, as between Eastern and Nimble, for Nimble to retain the payments at issue.

Eastern has not made that showing. The summary judgment record, even when viewed in Eastern's favor, shows at most that Conquest allegedly misrepresented its working capital and liabilities to Eastern in connection with the APA, and that Eastern later paid Nimble on Conquest's debt in the shadow of those alleged misrepresentations. That, however, is not enough by itself to make Nimble's retention of those payments unconscionable. Eastern's theory, as pled and argued, is that it paid Nimble because Conquest misled Eastern—not that Nimble knew of Conquest's alleged misrepresentation, that Nimble was not otherwise entitled to payment on the underlying invoices, or that these facts somehow otherwise render Nimble's receipt of those funds a product of unconscionability.

Texas courts have not articulated a single, rigid definition of unconscionability in the unjust enrichment context. But Texas law is clear about what unconscionability is *not*. Unjust enrichment is *not* a proper remedy merely because it "might appear expedient or generally fair that some recompense be afforded for an unfortunate loss to the claimant, or because the benefits to the person sought to be charged amount to a windfall." *Heldenfels II,* 832 S.W.2d at 42. At least one Texas court has defined "unconscionable" as generally meaning "shockingly unfair or unjust." *Wernecke v. W-Bar Ranches, Ltd.*, No. 13-12-00782-CV, 2013

6

WL 5522673, at *4 (Tex. App.—Corpus Christi-Edinburg Oct. 3, 2013, no pet.) (collecting cases to support proposition that Texas courts have not adopted a single definition, then quoting *Unconscionable*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 1286 (10th ed. 1996)). But, however phrased, the point remains the same: the asserted inequity must arise from true unconscionability, not merely from the fact that one party suffered from an unfortunate loss.

One recognized way to show that sort of inequity is to prove that Nimble was not actually entitled to the money. In *Bryan v. Citizens National Bank in Abilene*, the Texas Supreme Court held that mistaken payment alone did not entitle the payor to recover; the bank could recover only to the extent it proves the drawer of the check was not liable to the payee. 628 S.W.2d 761, 763-64 (Tex. 1982). In other words, it was not enough to show that the payor made the payment by mistake; the payor also had to show that the recipient was not entitled to keep it. That same logic undermines Eastern's theory in this case. Eastern has not pointed to evidence that Nimble's invoices were invalid, already satisfied, or otherwise not properly payable.

Courts have rejected passive unjust enrichment theories where the recipient genuinely believed the money it received was rightfully its own or a legitimate return, even though the funds were traceable to a third party's fraud. *See, e.g.*, *In re Okedokun*, 593 B.R. 469, 582 (Bankr. S.D. Tex. 2018) (citing *Walker v. Cotter Props., Inc.*, 181 S.W.3d 895, 900–01 (Tex. App.—Dallas 2006, no pet.), then citing *Cote v. Texcan Ventures II*, 271 S.W.3d 450, 453–54 (Tex. App.—Dallas 2008, no pet.)). They thus support the proposition that an innocent

recipient's good-faith entitlement to money strongly cuts against any finding of unconscionability—particularly in the specific circumstances present in this case.

In short, even assuming Eastern may proceed under a passive unjust enrichment theory, the facts it identifies show at most that Eastern may have suffered an unfortunate loss because of Conquest's alleged misrepresentations. That is not enough. On this record, no reasonable jury could find it unconscionable for Nimble to retain the payments Eastern made on Conquest's outstanding invoices. Summary judgment on Eastern's unjust enrichment counterclaim is therefore appropriate.

## IV.   Conclusion

In summary, the Court **DENIES** summary judgment on Nimble's third-party beneficiary theory but **GRANTS** it as to Eastern's unjust enrichment counterclaim.

The Court, however, adds one final note: future filings should be prepared with greater care. Here, Nimble's motion quoted a provision that does not appear in the APA, and the motion proceeded under Texas law without addressing the Mississippi choice-of-law clause.

Going forward, the Court expects counsel to ensure that filings accurately cite the operative contractual provisions, include proper record citations and pincites, use standard legal citation form, and are carefully reviewed for typographical and substantive errors.

Counsel also may not vaguely gesture toward exhibits and leave the Court to piece the argument and facts together. To borrow a well-known line, "[j]udges are not like pigs,

hunting for truffles buried in [the record]." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991).

It is so **ORDERED**.

SIGNED this 3rd day of April, 2026.

_____
DAVID COUNTS
UNITED STATES DISTRICT JUDGE

9