IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

NIMBLE CRANE, LLC,
         *Plaintiff,*

v.

                              §§§§§§§§§§§§§§§§§        **MO:25-CV-00194-DC**

CONQUEST COMPLETION
SERVICES, LLC and EASTERN
ENERGY SERVICES, INC.,
         *Defendants.*

## ORDER GRANTING SUMMARY JUDGMENT

Before the Court is Defendant Eastern Energy Services, Inc.'s Motion for Summary Judgment (Doc. 38). Having reviewed the motion, the response, the reply, the attached evidence, and the relevant law, this Court **GRANTS** in full Eastern's motion.

### I.    Background

This case arises from Conquest's unpaid debt to Nimble for oilfield services Nimble performed in 2023. In September 2023, Eastern as buyer entered into an Asset Purchase Agreement ("APA") with Conquest, as seller, under which Eastern purchased substantially all of Conquest's assets and agreed to assume certain liabilities.

Before closing, Conquest provided Eastern with a spreadsheet showing that, as of July 2023, Conquest owed Nimble $414,440.93 for services Nimble had rendered. After closing, Eastern sent Nimble several checks on Conquest invoices, and Nimble deposited them. Nimble contends those payments were made pursuant to a "payment plan"; Eastern disputes that the alleged payment plan is an enforceable contract between Eastern and Nimble. Nimble also alleges that twenty invoices remain unpaid in the amount of $341,590.93. In October 2024, Eastern and Conquest entered into a settlement agreement

concerning alleged discrepancies in Conquest's working capital and liabilities in connection with the APA. Nimble was not a party to that settlement.

## II.   Legal Standard

Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). When, as here, the movant seeks summary judgment on claims for which the nonmovant bears the burden of proof at trial, the movant may satisfy its burden by pointing to an absence of evidence on an essential element of those claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 321 (1986). The burden then shifts to the nonmovant to identify specific evidence in the record creating a genuine dispute for trial. *Id.*; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Conclusory allegations, speculation, and attorney argument do not suffice. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002).

## III.   Discussion

### A.  Nimble's Breach of Contract Claim Based on the Alleged Payment Plan

Eastern is entitled to summary judgment on Nimble's breach of contract claim to the extent it is based on the alleged payment plan, because Nimble has not identified evidence creating a genuine dispute as to consideration.

Under Texas law, consideration is a required element for a valid contract. *Copeland v. Alsobrook*, 3 S.W.3d 598, 603 (Tex. App.—San Antonio 1999, pet. denied). Consideration is a bargained-for exchange of promises. *Roark v. Stallworth Oil & Gas, Inc.,* 813 S.W.2d 492, 496 (Tex. 1991).

Nimble offers two different theories as to consideration: first, that no consideration is required for a third-party beneficiary in Texas and second, that Nimble's forbearance of pursuing its claim against Conquest is consideration for the alleged payment plan. Doc. 52 at 2. Both fail.

As to the first argument, Nimble is correct that a third-party beneficiary need not itself furnish consideration for the contract that allegedly confers third-party-beneficiary status. *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 677 (Tex. 2006). But that rule does not eliminate the requirement of consideration for a separate, stand-alone contract. Here, Nimble's claim based on the alleged payment plan is distinct from its APA-based third-party beneficiary theory. Thus, even if Nimble need not furnish consideration to enforce the APA as a third-party beneficiary, it still must point to evidence of consideration to enforce the alleged payment plan as an independent contract between Nimble and Eastern.

As to the second, where a party claims that forbearance supplies the necessary consideration, Texas law requires evidence of an agreement to forbear enforcement of a claim asserted in good faith. *S.A. Dome, L.L.C. v. Maloney Dev. P'ship, Ltd.*, No. 04-04-00586-CV, 2005 WL 1398106, at *3 (Tex. App.—San Antonio June 15, 2005, no pet.); *Wells v. Timms*, 275 S.W. 468, 471 (Tex. Civ. App.–Fort Worth 1925), *writ dismissed w.o.j.* (Nov. 4, 1925). But, as Eastern points out, Nimble has identified no evidence of that essential agreement element. Eastern's reply squarely raises that evidentiary failure, and Nimble has not answered it with record evidence.

Of course, the record contains evidence that Eastern sent Nimble a schedule of invoices, stated it would be "sticking to this payment plan," and made several payments on

Conquest invoices. But that evidence shows, at most, that Eastern proposed and made payments. It does not show what Nimble gave in exchange. Partial payments by Eastern are not themselves evidence of consideration furnished by Nimble for a separate contract with Eastern. Nor does the record cited here show that Nimble undertook any reciprocal obligation. On this record, a reasonable factfinder could not infer consideration from the mere existence of a payment schedule and subsequent payments alone.

Because Nimble bears the burden of proof at trial on its breach of contract claim, and because Eastern has shown an absence of evidence on consideration, Nimble was required to identify specific evidence creating a genuine dispute on that element. It has not done so. Summary judgment is therefore appropriate on Nimble's breach of contract claim based on the alleged payment plan.

### B. Nimble's Breach of Contract Claim Based on the Third-Party Beneficiary Theory

Eastern is similarly entitled to summary judgment on Nimble's breach of contract claim insofar as that claim rests on the theory that Nimble may enforce the APA as an intended third-party beneficiary.

Nimble's APA theory rises and falls with the contract itself. Nimble was not a party to the APA, so it may enforce the APA only if the contract unmistakably grants it enforceable rights as a third-party beneficiary. The APA, however, cuts the other way. As Eastern points out, the APA contains both a Mississippi choice-of-law clause and an express no-third-party-beneficiaries clause.

Under Mississippi law, a stranger to a contract may enforce a promise made for its benefit only when that right "spring[s] from the terms of the contract itself." *Burns v.*

4

*Washington Sav. & Loan Ass'n*, 171 So. 2d 322, 325 (Miss. 1965). Mississippi courts also require a direct, not merely incidental, benefit. *Garrett Enters. Consol., Inc. v. Allen Utils., LLC*, 176 So. 3d 800, 805–6 (Miss. Ct. App. 2015). And when contracting parties expressly disclaim third-party-beneficiary rights, Mississippi courts enforce that choice as written. *See id.* at 806.

Nimble resists that conclusion by emphasizing that Section 10.08 excepts Article VIII from the APA's no-third-party-beneficiaries clause. But that exception does not actually help Nimble. Section 8.03 grants indemnification rights to "Seller Indemnitees," defined as "Sellers and Sellers' Affiliates and their respective Representatives." Section 8.05, in turn, defines a "Third-Party Claim" as a claim brought by a person who is not a party, affiliate, or representative against an Indemnified Party. Read together, those provisions contemplate Nimble only as an outside claimant whose claim may trigger indemnification rights between the contracting parties; they do not confer on Nimble a direct right to enforce the APA itself. In other words, Article VIII allocates risk between buyer and seller and sets out the procedures for handling outside claims. It does not unmistakably grant enforcement rights to outsiders like Nimble. That is insufficient under Mississippi law, which, again, requires any third-party right to arise from the contract's own terms and to reflect a direct, not merely incidental, benefit. *Garrett*, 176 So. 3d at 805–6.

The same result would follow under Texas law. A nonparty may enforce a contract only if the agreement clearly and unequivocally expresses the contracting parties' intent to directly benefit that nonparty and give it the right to enforce the contract. *First Bank v.*

*Brumitt*, 519 S.W.3d 95, 102–4 (Tex. 2017). If there is any doubt, courts resolve that doubt against third-party-beneficiary status. *Id.* at 103–4.

So Nimble's argument that the Article VIII carveout would otherwise mean nothing is unpersuasive. *See* Doc. 52 at 7. It does mean something; it preserves indemnification rights for the defined Indemnified Parties. It does not, however, transform every outsider with a possible third-party claim into a third-party beneficiary.

Accordingly, Eastern is entitled to summary judgment on Nimble's breach-of-contract claim to the extent that claim is based on the theory that Nimble may enforce the APA as a third-party beneficiary.

### C. Nimble's Claim Under the Texas Uniform Fraudulent Transfer Act ("TUFTA")

Eastern is entitled to summary judgment on Nimble's claim under TUFTA.

TUFTA permits a creditor to avoid a transfer made by a debtor if the transfer was made "with actual intent to hinder, delay, or defraud any creditor of the debtor," or, in certain circumstances, if the debtor made the transfer without receiving reasonably equivalent value. TEX. BUS. & COM. CODE §§ 24.005(a), 24.006(a). Because direct proof of fraudulent intent is often unavailable, TUFTA supplies eleven nonexclusive "badges of fraud" that may be considered in determining whether the debtor acted with actual fraudulent intent. *Id.* § 24.005(b); *Janvey v. GMAG, L.L.C.*, 592 S.W.3d 125, 128-29 (Tex. 2019). But even when a creditor seeks relief against the transferee, the threshold question remains whether the debtor's transfer was fraudulent or otherwise voidable under TUFTA. TEX. BUS. & COM. CODE § 24.005(a). And TUFTA protects a transferee against avoidance

of an actually fraudulent transfer if the transferee "took in good faith and for a reasonably equivalent value." *Id.* § 24.009(a); *Janvey*, 592 S.W.3d at 129-30.

Here, Eastern did what Rule 56 requires.[1] It pointed to the absence of evidence supporting Nimble's TUFTA claim and came forward with some affirmative evidence of a negotiated, arm's-length transaction. In particular, Eastern's motion asserts that Nimble has no evidence that Conquest transferred assets to Eastern with intent to hinder, delay, or defraud Nimble and no evidence that Conquest failed to receive reasonably equivalent value. Doc. 38 at 2-3. Eastern also relies on Welch's affidavit, which states that the APA negotiations occurred over several months, both sides were represented by separate counsel, multiple drafts of the APA were exchanged, and Eastern believed at closing that it purchased the assets in good faith and for a reasonably equivalent value. Doc. 38-1 at 1-2.

That showing shifted the burden to Nimble to identify specific evidence in the record creating a genuine dispute of material fact. *Celotex*, 477 U.S. at 324. But Nimble did not meet that burden. Eastern's reply correctly points out that Nimble attached no exhibits to its response, offered no pinpoint citations to evidence in support of its TUFTA theory, and in the TUFTA section relied only on an unexplained citation to "Ex. 10," which the response did not include. Doc. 54 at 8-9; Doc. 52 at 14-16. Nimble's response instead offers largely conclusory assertions: that EES "violated TUFTA and intentionally left Conquest

---

[1] While Eastern at least attached evidentiary materials to its motion, it did not cite directly to those materials in the motion itself. *See generally* Doc. 38. Eastern nevertheless criticized Nimble for much the same failing in its response. *See* Doc. 54 at 1 (complaining that Nimble's response "does not contain **any** pinpoint citations to specific evidence in the record that supports Nimble's claims") (emphasis in original). Neither side has made the Court's task easier. Once again, "[j]udges are not like pigs, hunting for truffles buried in [the record]." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). Counsel are expected to do better in future filings.

insolvent," that four badges of fraud are present, and that "EES entered into a scheme to defraud Nimble." Doc. 52 at 14-16. Those assertions are not evidence.

Nor do the few facts Nimble does identify—absent attached proof from the record—create a triable TUFTA issue. Nimble's principal factual point is that, before Eastern acquired Conquest's assets, Conquest had "over $5,000,000 in its account" and therefore had more than enough money to pay Nimble. *Id.* at 15. Even if that assertion is accepted as true, it does not itself show that Conquest's subsequent transfer of assets to Eastern was made with actual intent to hinder, delay, or defraud Nimble. Nor does it show that Conquest failed to receive reasonably equivalent value for the transferred assets. At most, it suggests that Conquest may have had the ability to pay Nimble before the transaction. That is not the same thing as evidence that the transfer itself was fraudulent under TUFTA.

The same is true of Nimble's badges of fraud argument. Nimble says badges 4, 5, 9, and 10 are present, but it does not cite specific record evidence establishing those badges. *Id.* The response does not point to evidence that, **before the transfer**, Conquest had been sued or threatened with suit, that the transfer occurred for less than reasonably equivalent value, or that Conquest was insolvent or became insolvent within TUFTA's meaning. The additional facts Nimble cites do not meaningfully address TUFTA's elements. *Id.* And Nimble offers no developed response to Eastern's showing that the APA was negotiated over months, through separate counsel, with exchanged drafts and an asserted belief by Eastern that it was paying reasonably equivalent value in good faith. *See generally id.*

8

In short, on this record, Nimble's TUFTA theory rests on conclusory allegations and attorney argument, not competent summary judgment evidence. Summary judgment is therefore appropriate on Nimble's TUFTA claim.

### D. Nimble's Request for Declaratory Judgment

Finally, Eastern is entitled to summary judgment on Nimble's claim for declaratory relief.

The federal Declaratory Judgment Act provides that a court "may declare the rights and other legal relations of any interested party," 28 U.S.C. § 2201(a), but the Act is "an enabling act, which confers a discretion on the courts rather than an absolute right upon a litigant." *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995). Federal courts therefore retain "unique and substantial discretion" in deciding whether declaratory relief would serve a useful purpose. *Id.*; *Sherwin-Williams Co. v. Holmes County*, 343 F.3d 383, 389 (5th Cir. 2003) (internal citation omitted).

That discretion is commonly exercised to dismiss declaratory judgment claims that merely duplicate issues already presented by substantive causes of action. Courts in the Fifth Circuit "regularly reject declaratory judgment claims seeking the resolution of issues that will be resolved as part of the plaintiff's affirmative claims," because such requests are redundant and serve no useful purpose once the underlying claims and defenses are adjudicated. *Rail Scale, Inc. v. Balanced Railscale Certification, LLC*, No. 2:15-CV-02117-RSP, 2017 WL 319077, at *2 (E.D. Tex. Jan. 23, 2017) (internal citation omitted). Likewise, another district court in this circuit has dismissed a declaratory judgment claim on summary judgment where it was duplicative of the parties' breach of contract dispute and therefore "serve[d] no useful

purpose." *Great Am. Ins. Co. v. Goin*, No. 3:15-CV-75-L, 2017 WL 4238698, at *4 (N.D. Tex. Sept. 25, 2017) (citing *Wilton*, 515 U.S. at 288).

That is the situation here. Eastern's motion explains that Nimble seeks declarations that: (1) Nimble has a valid claim against Eastern for the money Nimble says Eastern owes; (2) emails and writings between Eastern and Nimble satisfy the statute of frauds; and (3) Eastern is liable under the doctrine of partial performance. Doc. 38 at 3. Those requested declarations are not independent claims for relief. They are simply the mirror image of Nimble's substantive contract theories and Eastern's defenses to them. Resolution of Nimble's breach of contract claims necessarily resolves whether Nimble has a valid claim, whether the statute of frauds bars recovery, and whether any asserted exception to that defense applies.

Nimble's response does not identify any distinct controversy that would remain unresolved after adjudication of the substantive claims. Instead, Nimble says only that declaratory relief is proper because of the "unique nature of the case" and the "very unusual defenses presented by EES." Doc. 52 at 2. Even assuming that were true, that is not enough. A declaratory judgment claim is not warranted merely because a party considers the opposing defenses unusual. Where, as here, the requested declarations would do no work beyond resolving issues already embedded in the parties' contract dispute, declaratory relief serves no independent or useful purpose.

Accordingly, Eastern is entitled to summary judgment on Nimble's declaratory judgment claim.

## IV.    Conclusion

In summary, Eastern's motion is **GRANTED** in full. Nimble's claims against Eastern—including its breach of contract claim based on the alleged payment plan, its APA-based third-party beneficiary theory, its TUFTA claim, and its declaratory judgment claim—are **DISMISSED**. The Court further **DECLINES** to issue declaratory relief on Eastern's counterclaim. These rulings, together with the Court's prior rulings, resolve all remaining claims between Nimble and Eastern.

It is so **ORDERED**.

SIGNED this 5th day of April, 2026.

_____
DAVID  COUNTS
UNITED STATES DISTRICT JUDGE